IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| MBI CORPORATION, | ) |
| | ) |
| Plaintiff, | ) Case No: 1:11-cv-00433-LMB-IDD |
| | ) |
| v. | ) |
| | ) |
| IMPORTERS SERVICE CORPORATION | ) |
| | ) |
| Defendant. | ) |
| | ) |

## AFFIDAVIT OF CHRIS BERLINER

Chris Berliner, being duly sworn, deposes and says as follows:

### General Information About ISC

1. I am the Vice President of Importers Service Corporation ("ISC"). ISC is a company that processes, imports, refines and markets gum arabic for use in various products, including beverages, candy, and pharmaceuticals.

2. I have been employed by ISC since 1994, and have served as its Vice President since 2003. As such, I am familiar with ISC and its business, and with the gum arabic industry. My duties and responsibilities as Vice President of ISC include working with suppliers and customers, engineering, research and development, quality control and compliance, and personnel management.

3. ISC is incorporated in New Jersey. Its offices and processing plants were located at 233 Suydam Ave., Jersey City, New Jersey 07304, from 1951 through February 12, 2010. Since June 2009, ISC has maintained its offices and processing plants at 65 Brunswick Ave., Edison, New Jersey 08817. (Between June 2009 and February 2010, ISC maintained both the Jersey City and Edison locations).

4. ISC does not have, nor has it ever had, any offices, processing plants, or facilities of any kind, outside of the State of New Jersey, and does not have any subsidiaries in the United States.

5. ISC currently has 41 employees, all of whom work at its facility in New Jersey.

6. The gum arabic industry is quite small, comprised of just two importers/refiners in the United States, one of which is ISC, and six worldwide. Thus, the relevant players in the industry are well known and familiar with each other. Therefore, ISC does, and has historically done, very little advertising or soliciting business.

### ISC's Lack of Contact with or Connection to Virginia

7. ISC has not had and does not have any:

    a. equipment in Virginia;

    b. assets in Virginia;

    c. property in Virginia; or

    d. bank accounts in Virginia.

8. ISC:

    a. is not authorized to do business in Virginia;

b. has not and does not pay taxes in Virginia;

c. has not and does not have any sales representatives or agents in Virginia;

d. does not have any customers in Virginia;

e. does not advertise in Virginia; and

f. does not solicit business in Virginia.

9. Since I joined ISC in 1994, ISC has not attended any industry trade show in Virginia and, to my knowledge, ISC did not attend an industry trade show in Virginia prior thereto.

10. Likewise, since I joined ISC in 1994, ISC's employees have not travelled to Virginia to transact business.

### MBI Corporation Solicits ISC's Business in 2007

11. MBI Corporation ("MBI") is a business that brokers the relationship between gum arabic growers/sellers in Africa and crude gum arabic purchasers in the United States. MBI works with African (notably Chadian) based businesses that purchase gum arabic from local growers, manually clean the gum to remove large impurities and amass amounts of material to enable cost effective shipment. These African businesses export the raw material to purchasers who, like ISC, refine the gum arabic to a state that is acceptable by the Food and Drug Administration (FDA) for use in food stuff.

12. In 2007, MBI's President Mohamed Benjelloun contacted Dave Hulmes, ISC's product manager, to solicit ISC to purchase gum arabic from MBI's African business contacts. ISC did not seek or invite that solicitation, nor did ISC solicit the African businesses

WASH_7950194.2

associated with MBI. All of the shipments that are the subject of this case occurred after MBI renewed contact with ISC in 2007.

13. As part of the initial 2007 discussions between ISC and MBI, Mr. Benjelloun traveled to ISC's offices in Jersey City, New Jersey in January 2007. Mr. Benjelloun met with Dave Hulmes, Eric Berliner (ISC's President), and me. At that meeting, Mr. Benjelloun made a sales pitch for business from ISC, touting MBI's connections in the industry and generally explaining how MBI could serve ISC. Attached as Exhibit A is a true copy of an email sent by Mr. Benjelloun to Eric Berliner, Dave Hulmes, and me after that meeting.

14. No employee of ISC has ever traveled to Virginia, either as part of the initial 2007 or any subsequent discussions between MBI and ISC, in connection with our business relationship.

## The Course of Conduct Between ISC and MBI

15. As a result of MBI's solicitation in 2007, ISC began acquiring raw gum arabic through MBI, receiving all of those shipments solely through the port of entry in New Jersey. The terms of the shipments were identified in purchase orders, a typical form of which is attached hereto as Exhibit B.

16. After his initial solicitation in 2007, Mr. Benjelloun often reached out to ISC, calling or emailing ISC to inform it of current pricing for gum arabic and to inquire if ISC wished to order gum arabic. After such contact, ISC then considered MBI's proposal against other competitors' offers, and the parties may have further discussed the terms and pricing of the proposed order. If ISC accepted MBI's proposal, ISC would typically send a purchase order by email to MBI. MBI then advised its business contacts in Africa of the order and

4

those businesses made the arrangements with local firms and shipping lines to transport the gum arabic to New Jersey.

17. The businesses in Africa were responsible for ensuring that the gum arabic was properly transported from warehouses in N'Djamena, Chad, to the ports in either Lagos, Nigeria or Douala, Cameroon, where it was then loaded into shipping containers and placed on cargo vessels for transit to New Jersey. As the importer of record on these shipments, MBI was responsible for ensuring that their requisite import documents were delivered in a timely fashion from the African businesses' steam ship lines to ISC. MBI was also responsible for the costs associated with the transportation of the material.

18. Except for the initial 2007 discussions between MBI and ISC, which took place in New Jersey, all negotiations and discussions between MBI and ISC since 2007 were conducted by telephone or email. No employee of ISC has traveled to Virginia to conduct business with MBI, and, with the exception of the initial meeting in New Jersey, since 2007 representatives of MBI and ISC have never met in person to discuss a proposed order.

19. The only MBI representative from whom ISC has ever ordered gum arabic or negotiated with is Mr. Benjelloun. I am not aware of any MBI employee other than Mr. Benjelloun, if indeed, there are any other employees.

20. It is my understanding that MBI's business address in Virginia is a residential address. I also understand that Mr. Benjelloun frequently travels abroad for work.

21. All of the subject gum arabic that MBI has imported into the United States for ISC was shipped from Africa to Port Elizabeth, New Jersey. The gum arabic ISC has

WASH_7950194.2

purchased from MBI since 2007 has never entered the United States through any state other than New Jersey.

22. After the gum arabic arrives at the port in New Jersey, importation documentation is required for the United States Customs Agent to clear the material through the local customs office. This clearance was handled by GW Harder, which is based in Cranford, New Jersey, and has historically served as ISC's agent. Once the local United States Customs office permitted the material to be released to enter the US, ISC forwarded the necessary documentation to its trucker, Bob's Express, which is based in Neptune, New Jersey. Bob's Express would then pull the shipping containers off of the pier and transport them to ISC for offloading. ISC offloaded the material to pallets, then weighed, tested, and stored the material, and finally entered it into inventory. MBI did not take possession of, handle, or even see the imported gum arabic at any point in the process from its origination in Africa and until its arrival at ISC's New Jersey facility.

23. The business relationship between ISC and MBI ended in 2010. Since the end of ISC/MBI relationship, ISC has not transacted business with anyone in Virginia.

## The Burden to ISC of Litigating This Case in Virginia

24. The ISC employees with knowledge of the shipments at issue in this lawsuit are Dave Hulmes, Eric Berliner, Mary Newcomb (ISC office/logistics manager), and me.

25. Being a small company, with limited personnel, ISC would be severely and negatively impacted if its top management or key personnel were unavailable to work for any extended period of time. The absence of Dave Hulmes, Eric Berliner, Mary Newcomb and

me, who comprise top management and key personnel, would have an enormous negative impact on ISC's day to day operations.

27. More specifically, the absence of some, let alone all, of these four employees would mean that ISC would have limited ability to deal with engineering and human resources issues, or to respond to its customers. Often times, ISC must make immediate decisions on business issues, and without the four of us available to respond timely and/or to confer, as is often needed, the ability to operate ISC's business would be impeded.

27. In addition, Dave Hulmes and I are the ISC personnel responsible for the review of the testing of the finished gum arabic to ensure that it complies with U.S. Pharmacopeia-National Formulary (USP-NF) regulations and that it is manufactured under cGMP (current Good Manufacturing Procedures) as per FDA requirements. These governmental regulations require experienced oversight and are designed to ensure that the gum arabic is not in any way adulterated with foreign materials, non food grade chemicals or biological hazards. Dave Hulmes and I are the only ISC personnel with the experience needed to ensure that the regulations have been and are being met, and our lack of attention to these important matters and, thus, ISC's lack of attention and compliance, could result in a food safety issue, and in the worst case, require product recall.

28. Finally, traveling to Virginia either for depositions or trial would be burdensome for Mary Newcomb, as she is the primary caregiver for her granddaughter.

FURTHER THE AFFIANT SAYETH NOT

_____
Chris Berliner

7

Subscribed and sworn to before me this 16th day of May 2011.

_____
Notary Public

My commission expires: 3-21-2016

**DARBBIE A. MILLER**
**NOTARY PUBLIC OF NEW JERSEY**
**My Commission Expires March 21, 2016**

# EXHIBIT A

## Dave Hulmes

**From:** benjmbi@aol.com
**Sent:** Wednesday, January 24, 2007 1:14 PM
**To:** EBerliner@iscgums.com; Chris@ISCGums.com; DHulmes@ISCGums.com
**Subject:** Acacia imports from Chad and other African countries

Hi Eric, Chris and David.

It was a sincere pleasure for me seeing you after so long. Thank you very much for the time and consideration in meeting with me yesterday.

I am happy to say that we had a very good meeting and positive exchange of views regarding a market you know very well.

I took the opportunity to present to you very openly my own ability and experience to assist ISC in ways that can be of mutual interest and would like to further clarify the following points:

1. ORGANIC certification : After I though about the cost of certification and the yearly audits, I relieve that the standing certifications will have to be amended in any case in order to cover the USA market, however the exporters should be responsible for covering the initial and yearly costs, not ISC. I will have No objections from the exporters as soon as an import potential of the ORGANIC quality is offered.

2. MBI is available to be, when needed or preferred, the " importer of records " in any imports of ACACIA to the USA. MBI is licensed and registered with FDA to this effect.

I remain confident to be in position to secure quality gum from Chad at competitive prices. My current offers stand firm, I will be following the local market in N'Djamena and will keep you posted of any change.

Once again, it was good to see you and I am looking forward to hearing from you .

With my best regards.

M. Benjelloun

---

**Check out the new AOL.** Most comprehensive set of free safety and security tools, free access to millions of high-quality videos from across the web, free AOL Mail and more.

# EXHIBIT B



**IMPORTERS SERVICE CORPORATION**
233 Suydam Avenue
Jersey City, NJ 07304-3399
201-332-6970
Fax: 201-332-4152



The following number must appear on all related correspondence, shipping papers, and invoices:
**P.O. NUMBER: 2009-07F Revised**

**To:**
Mr. Mohamed Benjelloun
MBI
7077 Cumberland Drive
Warrenton, VA 20187

**Ship To:**
Importers Service Corporation
233 Suydam Avenue
Jersey City, NJ 07304

| P.O. DATE | REQUISITIONER | SHIP VIA | F.O.B. POINT | TERMS |
|---|---|---|---|---|
| 1/30/09 | DH | Best Way | Douala, Cameroon | Douala B/L date |

| QTY | UNIT | DESCRIPTION | | UNIT PRICE | TOTAL |
|---|---|---|---|---|---|
| 200 | MT | Gum Friable (Acacia seyal) | Aprox | $1,480.00 | $296,000.00 |
| | | Payment to be made in US$ at conversion Euro 1150 | | | $0.00 |
| | | 3 Original B/L's with MBI importer of record, | | | $0.00 |
| | | 3 Certificates of Origin, Fumigation Cert. | | | $0.00 |
| | | No more than 10 containers per B/L | | | $0.00 |
| | | Shipment 200 MT prompt January 2009, partial shipment as soon as material please | | | $0.00 |

| | |
|---|---|
| SUBTOTAL | $296,000.00 |
| SALES TAX | $0.00 |
| SHIPPING & HANDLING | $0.00 |
| OTHER | $0.00 |
| TOTAL | $296,000.00 |

1. Send 1 original and 3 copies fo your invoice, certificate of origin, and fumigation certificate, as well as a full set of clean on board bill of lading.

2. Enter this order in accordance with the prices, terms, delivery method, and specifications listed above.

3. Please notify us immediately if you are unable to ship as specified.

Authorized by _____ Date _____

Accepted by _____ Date _____