**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| MBI CORPORATION, | ) |
| | ) |
|       Plaintiff, | ) Case No: 1:11-cv-00433-LMB- |
| | ) IDD |
| | ) |
| v. | ) |
| | ) |
| IMPORTERS SERVICE CORPORATION | ) |
| | ) |
|       Defendant. | ) |
| | ) |

## IMPORTERS SERVICE CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, OR ALTERNATIVELY, TO TRANSFER VENUE TO THE DISTRICT OF NEW JERSEY

Lewis A. Smith (VSB No. 77333)
Foley & Lardner LLP
3000 K Street NW, Suite 600
Washington, DC 20007
202-672-5300
lsmith@foley.com

Attorney for Defendant
Importers Service Corporation

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page**

*Agilent Techs., Inc. v. Micromuse, Inc.*, 316 F. Supp. 2d 322 (E.D. Va. 2004).................... 20

*ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707 (4th Cir. 2002) ................. 6, 16

*Bond Assocs., Inc. v. Broad Waverly & Assocs.*, No. 3:93cv803,
1994 U.S. Dist LEXIS 12000 (E.D. Va. July 20, 1994) ....................................... 9-12, 18

*Century Steel Prods. v. McGuire Refrigeration, Inc.* 29 Va. Cir. 353
(Va. Cir. Ct. 1992) ............................................................................ 9, 11, 19

*Combs v. Bakker*, 886 F.2d 673 (4th Cir. 1989) ................................................. 4

*Consulting Eng'rs., Inc. v. Geometric Software Solutions*, 2007
U.S. Dist. LEXIS 25150, No. 1:06cv956 (E.D. Va. Apr. 3, 2007)...................................... 11, 17

*Consulting Eng'rs. Corp. v. Geometric Ltd.*, 561 F.3d 273 (4th Cir. 2009).......................... 5, 7, 13, 18

*Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners,*
229 F.3d 448 (4th Cir. 2000)…………………………………………………. 5, 6, 8, 9, 10, 16, 17

*ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617 (4th Cir. 1997)...................................... 17

*Kabat v. Bayer Cropscience LP* 2008 U.S. Dist. LEXIS 41187, No. 3:07-cv-555

(E.D. Va. May 22, 2008)................................................................................... 20

*Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487 (1941)………………………… ..... 15

*Labriola v. Southeast Milk, Inc.*, 2008 U.S. Dist. LEXIS 84404, No. 1:08cv893
(E.D. Va. Oct. 21, 2008) .................................................................................... 11, 18

*Madaus v. November Hill Farm, Inc.*, 630 F. Supp. 1246 (W.D. Va. 1986)........................ 15

**Statutes**

28 U.S.C. § 1391 ................................................................................ 20

28 U.S.C. § 1404 ................................................................................ 20

28 U.S.C. § 1406 ................................................................... 19, 20, 22

Va. Code § 8.01-328.1(A)(1) ............................................................... 5

Defendant Importers Service Corporation ("ISC") submits this memorandum in support of its Motion to Dismiss Plaintiff MBI Corporation's ("MBI") Complaint for lack of personal jurisdiction, or alternatively, to transfer venue to the United States District Court for the District of New Jersey.

## I.     FACTUAL BACKGROUND

ISC is a New Jersey corporation that processes imported gum arabic for use in various products. Berliner Aff. ¶ 1. Its offices and processing plants are located in, and have always been located in, New Jersey. Berliner Aff. ¶¶ 3-4.  ISC does not have any plants or facilities of any kind outside New Jersey. Berliner Aff. ¶ 4. Currently, ISC has 41 employees, all of whom work at ISC's facility in New Jersey. Berliner Aff. ¶ 5.

Other than contracting with the Virginia based plaintiff, ISC's connection to Virginia is non-existent:

- ISC is not authorized to do business in Virginia;

- ISC has not and does not pay taxes in Virginia;

- ISC has not had nor does it have any agents or sales representatives in Virginia;

- ISC has not had nor does it have any equipment, assets, or property in Virginia;

- ISC does not have any customers in Virginia;

- ISC does not do any advertising or soliciting of business in Virginia and, indeed, does very little advertising or soliciting of business in general; and

- ISC's employees do not travel to Virginia to conduct business.

- Since at least as early as 1994 to the present, ISC has not attended any industry trade show in Virginia, and to the knowledge of ISC's Vice President, ISC did not attend any industry trade show in Virginia prior thereto.

Berliner Aff. ¶¶ 7-10.

ISC's specific relationship with MBI also demonstrates a lack of connection to Virginia. MBI first reached out to ISC and solicited its business in the 1990's after the United States government began encouraging trade with the country of Chad, a major source of gum arabic. Hulmes Aff. ¶ 3. In approximately 1994, MBI's President Mohamed Benjelloun, and ISC's product manager Dave Hulmes met at ISC's offices in New Jersey to discuss a possible relationship and, thereafter, began a business relationship in which MBI's role was to arrange with its African business contacts for the shipment and importation of gum arabic from Africa to ISC in New Jersey. Hulmes Aff. ¶ 3. The relationship was of a short duration and ended in approximately 1997 or 1998. Hulmes Aff. ¶ 4. During this time, all of the imported gum arabic that ISC purchased through MBI was shipped directly from Africa and to a New Jersey port of entry: none of the imported material entered any other state. Hulmes Aff. ¶ 4. No ISC employee transacted business with MBI in Virginia during this time. Hulmes Aff. ¶ 4.

From approximately 1997 or 1998 until 2007, no business was transacted between ISC and MBI, and the shipments at issue in this case are a result of the parties' post 2007 relationship. Hulmes Aff. ¶ 5, Berliner Aff. ¶ 12.

The post-2007 relationship began when Mr. Benjelloun again contacted ISC's product manager Dave Hulmes to solicit MBI's business and offered MBI's import services to ISC. Berliner Aff. ¶ 12. Critically, ISC did not solicit MBI's invitation to do business. MBI's outreach to ISC was completely unsolicited. Berliner Aff. ¶ 12. Upon MBI's outreach to ISC, Mr. Benjelloun traveled to ISC's offices in Jersey City, New Jersey. Berliner Aff. ¶ 13. At this meeting, Mr. Benjelloun made a sales pitch to ISC for it to use MBI's services for ISC's gum arabic importation. Berliner Aff. ¶ 13. The fact that it was MBI which solicited ISC is apparent

from a January 2007 email from Mr. Benjelloun to ISC, in which Mr. Benjelloun thanked ISC for meeting with him and considering his offer to do business. *See* Ex. A to Berliner Aff.

No ISC employee ever traveled to Virginia either during or in connection with these 2007 discussions. Berliner Aff. ¶ 14.

MBI's role in the parties' business relationship was to arrange with its African business contacts for the shipment and importation of gum arabic from Africa to ISC in New Jersey. Throughout the course of this post 2007 relationship:

- Mr. Benjelloun reached out to ISC, calling or emailing ISC to inquire if ISC wished to order gum arabic;

- All of the negotiation and discussion concerning proposed orders was conducted by telephone or email;

- Importantly, no employee of ISC ever traveled to Virginia to transact business with MBI;

- The only in person meeting between MBI and ISC took place in ISC's home state of New Jersey; and

- The gum arabic shipments now at issue all traveled from Africa directly to New Jersey and never passed through any other state.

Berliner Aff. ¶¶ 16, 18, 21.

The shipments of gum arabic were made through simple purchase orders, which did not contain any choice of law or venue provision. *See* Ex. B to Berliner Aff.

MBI was responsible for ensuring that import documentation for the gum arabic shipments were delivered and provided to ISC in New Jersey in a timely manner. Berliner Aff. ¶ 17. After the gum arabic shipment and its requisite import documentation arrived in New Jersey,

MBI's duties basically ceased. New Jersey based agents of ISC cleared the gum arabic shipment through U.S. Customs at the New Jersey port of entry, took it off the pier and transported it to ISC's facility for offloading. Berliner Aff. ¶ 22.

The parties' business relationship ended in 2010. Berliner Aff. ¶ 23. MBI filed suit in the Circuit Court for Fauquier County in March 2011, and ISC subsequently removed to this Court. MBI contends that ISC owes it an outstanding balance on an invoice for purchase orders. ISC has filed a counterclaim, alleging that due to various errors committed by MBI, ISC does not owe MBI anything and that MBI owes ISC approximately $27,000.

Litigating this matter in Virginia would impose a severe burden for ISC. Four key ISC employees have knowledge of the shipments at issue and thus would likely be witnesses. Berliner Aff. ¶ 24. Their absence from work for depositions and trial would greatly affect the day to day operations of ISC, which is a small company. Berliner Aff. ¶¶ 25, 26. In particular two of the four ISC employees are responsible for testing gum arabic for compliance with government regulations, and their inability to attend to this function could result in a food safety issue, and in the worst case, product recall. Berliner Aff. ¶ 27.

II.     ARGUMENT

   A.     This Court Lacks Personal Jurisdiction Over ISC Under Either The Constitutional Due Process Standard Or The Virginia Long Arm Statute

As plaintiff, MBI bears the burden of demonstrating by a preponderance of the evidence this Court's proper exercise of personal jurisdiction over ISC, a foreign defendant, once that jurisdiction has been questioned and moved upon by ISC. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). MBI cannot meet that burden.

This Court may only exercise personal jurisdiction over a foreign corporation like ISC if it is authorized by the long arm-statute of the state in which it sits and application of the long-

arm statute is consistent with the due process clause of the Fourteenth Amendment of the United States Constitution. *Consulting Eng'rs. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009).

Here, MBI bases jurisdiction on Va. Code § 8.01-328.1(A)(1), which states that a Virginia court "may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising form the person's [t]ransacting any business in this Commonwealth." The statute is intended to extend personal jurisdiction to the extent permissible under the Due Process Clause. *Consulting Eng'rs.* 561 F.3d at 277. Accordingly, the statutory inquiry under the long-arm statute "merges" with the constitutional inquiry. *Id. See also Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners,* 229 F.3d 448, 450 (4th Cir. 2000) ("the statutory and constitutional inquiries coalesce into the question of whether [the defendant] had sufficient minimum contacts with Virginia to satisfy due process requirements.").

While the two inquiries do merge, it is still possible that a defendant's contacts with Virginia could satisfy due process, but "escape the literal grasp of the long-arm statute." *Consulting Eng'rs.,* 561 F.3d at 277, n.4. (noting that the standard for exercising jurisdiction under the long-arm statute is "arguably more stringent" than the constitutional standard).

As ISC will demonstrate below, this Court lacks and may not exercise personal jurisdiction over ISC under either the constitutional standard or the Virginia long-arm statute.

### 1.    Constitutional Due Process Standard

In order to meet the constitutional due process standard, a defendant must have sufficient "minimum contacts" with the forum state such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Consulting Eng'rs.*, 561 F.3d at 277 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). The minimum contacts test requires the plaintiff to show that the foreign defendant "purposefully directed his activities at the

residents of the forum" and that the plaintiff's cause of action "arise[s] out of" those activities. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, (1985)). This test is designed to ensure that the defendant is not "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Id.* (quoting *Burger King*, 471 U.S. at 475). It protects a defendant from having to defend himself in a forum where he should not have anticipated being sued. *Id.* (citing to *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Finally, "because a sovereign's jurisdiction remains territorial, to justify the exercise of personal jurisdiction over a non-resident defendant, the defendant's contacts with the forum state must have been so substantial that 'they amount to a surrogate for presence and thus render the exercise of sovereignty just.'" *Id.* (quoting *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997)).

There are two types of personal jurisdiction under the constitutional standard – specific jurisdiction and general jurisdiction. This Court may not exercise either type of jurisdiction.

### a.       Specific Jurisdiction

Specific jurisdiction applies and may serve as a basis to exercise personal jurisdiction over a foreign defendant when the defendant's contacts with the state are the basis for the suit. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). *See also Diamond*, 229 F.3d at 450 (stating that a court may exercise specific jurisdiction when "the contacts relate to the cause of action and create a substantial connection with the forum state.").

The Fourth Circuit has developed a three part test for analyzing specific jurisdiction: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; (3) whether the exercise of personal jurisdiction would be constitutionally reasonable."

*Consulting Eng'rs.*, 561 F.3d at 278 (quoting *ALS Scan*, 293 F.3d at 712). It is only if this Court

finds that MBI has satisfied the first part of this test, that the Court moves on to the other two

parts. *Id.*

**Part One of the Fourth Circuit Test**

The first part of the Fourth Circuit test articulates the requirement that the defendant

"purposefully avail himself of the privilege of conducting business under the laws of the forum

state." *Id*. Among the factors courts have looked to in assessing this requirement are:

> Whether the defendant maintains offices or agents
> in the forum state.
>
> Whether the defendant owns property in the forum
> state.
>
> Whether the defendant reached into the forum state
> to solicit or initiate business.
>
> Whether the defendant deliberately engaged in
> significant or long-term business activities in the
> forum state.
>
> Whether the parties contractually agreed that the
> law of the forum state would govern disputes.
>
> Whether the defendant made in-person contact with
> the resident of the forum in the forum state
> regarding the business relationship.
>
> The nature, quality and extent of the parties'
> communications about the business being
> transacted.
>
> Whether the performance of contractual duties was
> to occur within the forum.

*Id.* (internal citations omitted).

None of these factors are present here.

First, as stated above, ISC does not maintain any offices or agents in Virginia. Berliner Aff. ¶¶ 4, 8. Second, ISC does not own any property in Virginia. Berliner Aff. ¶ 7 Third, ISC did not reach into Virginia to initiate or solicit business.

As detailed above, ISC does not solicit business in Virginia. In fact, given the nature of its industry, ISC does very little soliciting or advertising generally, and none in Virginia. Berliner Aff. ¶ 6, 8. Furthermore, the shipments here at issue are the direct result of MBI's unsolicited solicitation of ISC's business in 2007. ISC did not request MBI's services. Rather, MBI sought out ISC in an effort to gain its business. Berliner Aff. ¶ 12. MBI's solicitation of ISC is clear from the January 24, 2007 email from Mr. Benjelloun to ISC. Ex. A to Berliner Aff. For example, he wrote that he thanked ISC for its "time and consideration in meeting with me yesterday." He noted that he had "present[ed] to you very openly my own ability and experience to assist ISC in ways that can be of mutual interest . . ." Moreover, he finished by stating that his "current offers stand firm" and that he was "looking forward" to hearing from ISC. These quotes well evidence that MBI sought out and solicited ISC's business, and not the other way around.

The fact that it was the plaintiff party who initiated a business relationship with the foreign defendant is key. For example, in *Diamond* the court noted that during negotiations of the contract, the parties met in Ohio on several occasions, but never in Virginia. *Diamond*, 229 F.3d at 451. The contract was also "initiated" by the plaintiff, and represented "the product of [defendants'] favorable response to [plaintiff's] unsolicited invitation for performance of a project in Ohio." *Id.* Similarly, here, the agreement between MBI and ISC represented the product of ISC's favorable response to MBI's unsolicited invitation to do business with ISC in January 2007. Also, as in *Diamond*, MBI solicited ISC to perform a contract in ISC's home state.

Also instructive is *Bond Assocs. v. Broad Waverly & Assocs.*, No. 3:93cv803, 1994 U.S. Dist. LEXIS 12000 (E.D. Va. July 20, 1994). That case involved a contract between a New Jersey corporate defendant and a Virginia corporate plaintiff. The contract called for the plaintiff to sell to the New Jersey defendant a computer system and to install the system at defendant's offices in New Jersey. *Id.* at *3. The Virginia plaintiff contended that the New Jersey defendant breached the contract by not remitting payment due under the contract. *Id.* at *4.

The relationship between the parties began when defendant's president received an unsolicited phone call at defendant's offices in New Jersey. *Id.* at *1. The Virginia plaintiff's representative requested the opportunity to make a sales presentation. *Id.* As here, that presentation took place at defendant's offices in New Jersey. *Id.* The court found it significant that "when [plaintiff] asked for the opportunity to make a sales presentation, [defendant] asked [plaintiff] to come to New Jersey." *Id.* at *12. Similarly, here, MBI contacted ISC, requested the opportunity to do business with ISC, and that solicitation was accepted and resulted in MBI's travelling to New Jersey and a meeting at ISC's offices in New Jersey.

Similarly, *Century Steel Prods. v. McGuire Refrigeration, Inc.* 29 Va. Cir. 353 (Va. Cir. Ct. 1992), involved a plaintiff Virginia corporation that manufactured steel products. The defendant Maryland corporation purchased those products from plaintiff, and those products were shipped to Maryland. The court held that jurisdiction in Virginia was not proper. *Id.* at 355. As in *Bond* and *Diamond*, the court noted that a representative of plaintiff initiated contact with a representative of the foreign defendant. *Id.* at 353. Moreover, that contact occurred at defendant's Maryland office. *Id.*

Fourth, ISC has never deliberately engaged in significant or long-term business activities in Virginia. This fact is made clear from the Berliner Affidavit. ISC's business function is to

process and sell gum arabic. This function is carried out, not in Virginia, but only at ISC's processing plants in New Jersey. Berliner Aff. ¶ 4. Additionally, ISC does not have any Virginia customers. Berliner Aff. ¶ 8. It does not advertise or solicit business in Virginia, and at least since 1994, if not earlier, ISC has not attended any industry trade show in Virginia. Berliner Aff. ¶¶ 8, 9. Moreover, no ISC employees visit Virginia to transact business, whether with MBI or anyone else. Berliner Aff. ¶ 10.

Fifth, the parties' never agreed that any disputes between them would be venued in Virginia or that the law of Virginia would govern any such disputes. The parties' transactions were conducted through purchase orders, like the attached Exhibit B to the Berliner Affidavit. The purchase order makes no mention of the law of any state, much less Virginia, governing any disputes, or that suits arising out of their business relationship would be venued in Virginia.

Sixth, no one from ISC has ever traveled to Virginia for the purpose of transacting business with MBI. Hulmes Aff. ¶ 4, Berliner Aff. ¶ 14. In contrast, MBI came to ISC's offices in New Jersey on two occasions to conduct business. Similarly, in *Bond Assocs.* the court noted that the defendant's representative who negotiated the contract did not go to Virginia, but, rather, remained in New Jersey. *Bond Assocs.*, 1994 U.S. Dist. LEXIS 12000 at *12. In *Diamond*, the parties met in Ohio on several occasions, but never in Virginia. *Diamond*, 229 F.3d at 451. In *Century Steel*, at no time did a representative of the defendant visit the plaintiff' facility in Virginia. *Century Steel*, 29 Va. Cir. at 353.

Seventh, the nature of the parties' communications evidences that this Court may not exercise personal jurisdiction over ISC. The key here is that the parties' communications (other than the initial meeting which took place in New Jersey) were always conducted electronically via phone or email. Berliner Aff. ¶ 18. This fact is significant because "[i]t is generally held that

mere electronic communications in furtherance of a transaction are insufficient to form a basis for personal jurisdiction." *Consulting Eng'rs., Inc. v. Geometric Software Solutions*, 2007 U.S. Dist. LEXIS 25150 at *16 (E.D. Va. Apr. 3, 2007).[1]

In *Consulting Eng'rs.*, the court held that the fact that the defendant exchanged emails and several phone calls with the plaintiff's Virginia office did not confer specific jurisdiction over the defendant. *Id.* at *16-18. Similarly, in *Labriola v. Southeast Milk, Inc.,* 2008 U.S. Dist. LEXIS 84404, at *14 (E.D. Va. Oct. 21, 2008), the court held that the fact that the defendant may have communicated with the plaintiff regarding the parties' contracts while the plaintiff was present in Virginia was not enough to confer specific jurisdiction.

Moreover, in *Bond Assocs.*, the plaintiff also argued that the negotiation of the contract by correspondence, telephone, and facsimile was enough to confer jurisdiction. *Bond Assocs.*, 1994 U.S. Dist. LEXIS at *10. The court rejected this argument. *Id.* Similarly, in *Century Steel*, the court noted that the only contacts the defendant had with Virginia was placing orders via facsimile and an occasional telephone call. *Century Steel*, 29 Va. Cir. at 354. The court stated that "the mere placing of orders for the shipment of goods is insufficient to establish the requisite " 'minimum contacts' ". *Id.*

The electronic communications between the parties appears to be the basis of MBI's attempt to have this Court exercise jurisdiction over ISC – that ISC exchanged emails and phone calls with MBI's Virginia office for the various purchase orders. But where nothing else was actually done in Virginia, and in particular no in person meetings, the case law instructs that this is simply not enough as it does not meet due process requirements.

---

[1] This is the Eastern District of Virginia opinion that was affirmed by the Fourth Circuit in 2009.

Eighth, the performance of the contract occurred in New Jersey. The subject purchase orders and invoices all involved shipments to New Jersey. Under the parties' agreement, MBI was responsible for ensuring that the gum arabic was shipped to ISC in New Jersey. MBI was also responsible for sending the import documents to the port in New Jersey. Berliner Aff. ¶ 17. Furthermore, at no point did any of the gum arabic that was purchased under the purchase orders enter any state other than New Jersey, much less enter Virginia. Berliner Aff. ¶ 21. This contract was indisputably performed in New Jersey. Moreover, any performance by MBI out of Virginia is irrelevant, as "personal jurisdiction may not be exercised on the basis of performance of a contract in the forum state by the party asserting jurisdiction." *Bond Assocs.,* 1994 U.S. Dist. LEXIS 12000 at *14.

Inasmuch as none of the requisite eight factors evidencing a basis for specific jurisdiction over this foreign defendant, ISC, are present in this case, this Court may not exercise specific jurisdiction under the first part of the Fourth Circuit's specific jurisdiction test.

**Part Two of the Fourth Circuit Test**

MBI's claims do not arise out of activities directed at Virginia. Rather, they arise out of activities directed at New Jersey. Specifically, the claims arise out of MBI's deliberate decision to visit ISC in New Jersey in 2007 in order to solicit and begin the business relationship. Relevant to part two of the Fourth Circuit test are the following facts. After and as a result of MBI's visit to New Jersey, the parties entered into an agreement under which MBI would arrange for gum arabic to be transported from Africa to ISC in New Jersey. MBI's business function was to work with its business contacts in Africa to arrange for gum arabic to be sent to ISC in New Jersey. MBI performed that business function, directing its activities toward New Jersey by instructing its business contacts to send shipments directly to ISC in New Jersey and

by causing them to send the shipment importation documents to New Jersey for presentation to U.S. customs at the New Jersey port of entry. Berliner Aff. ¶ 17. It was the arrival of the gum arabic in New Jersey that triggered MBI's claim that it is entitled to an unpaid alleged remaining balance for the shipments. Similarly, the arrival of gum arabic in New Jersey triggered ISC's counterclaim that shipments were underweight, the importation documents were delivered in an untimely manner and resulted in demurrage charges paid by ISC but for which MBI is admittedly responsible, that MBI failed to credit ISC for all payments made and, that consequently, ISC does not owe MBI any sums. This suit clearly arises out of New Jersey, not Virginia.

**Part Three of the Fourth Circuit Test**

The third part of the Fourth Circuit's test permits a court to "consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there." *Consulting Eng'rs.*, 561 F.3d at 279. Once again, MBI cannot establish, let alone prove, that ISC has availed itself of the privilege of doing business in Virginia. Nevertheless, jurisdiction is still improper under this part of the test.

The factors considered under this part of the test include: "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interest of the states in furthering substantive social policies." *Id.* (citing *Burger King*, 471 U.S. at 477).

The burden to ISC of litigating in Virginia would be great. There are four ISC employees who have knowledge of the shipments at issue, employees who are either top management and/or key to ISC's day to day business. Berliner Aff. ¶ 24. These four people would likely be

deposed and be witnesses in a trial. As a small company, ISC would be heavily burdened if these four individuals were hailed into Virginia, whether for their depositions and/or to testify in a trial. The day to day operations of the company would be severely affected, including ISC's ability to respond to its customers and make key business decisions in the needed timely manner. Berliner Aff. ¶ 26. Furthermore, two of these ISC employees have a very significant responsibility – reviewing the processing and testing of the gum arabic to ensure its compliance with governmental regulations which ensure its safety given its intended use in food products. Berliner Aff. ¶ 27. The inability to conduct this review could potentially result in a public food safety issue or a product recall, each being a result with serious consequences either for the public and/or for ISC. Berliner Aff. ¶ 27.  In addition, traveling to Virginia and being absent from New Jersey would be especially difficult for one of these ISC employees, as she serves as the primary caregiver for her granddaughter. Berliner Aff. ¶ 28.

Second, New Jersey has a strong interest in adjudicating this issue. The port where the gum arabic entered into the United States is located in New Jersey. This case presents issues of whether imports into that State conformed to their promised weight, were fully paid for and whether their associated importation documentation arrived on time in that State or were late, resulting in demurrage charges for which MBI was admittedly responsible but which ISC paid. New Jersey has a strong interest in determining whether a contract that was performed within its borders was breached in any way. Furthermore, New Jersey law would apply to this dispute, as under the law of Virginia[2], the law of the place of performance governs questions concerning the performance of a contract. *Madaus v. November Hill Farm, Inc.*, 630 F. Supp. 1246, 1248 (W.D.

---

[2] A court sitting in diversity applies the conflict of laws rules of the forum state. *Klaxon Co. v. Stentor Electric Mfg. Co.* 313 U.S. 487, 496 (1941).

WASH_7949846.3

Va. 1986). Moreover, "the place of performance of a sales contract is usually considered to be the place where goods are delivered." *Id.* This case concerns the parties' contract performance. Thus, New Jersey law applies. New Jersey has a strong interest in deciding a dispute that involves application of its laws and will contribute to the development of its contract law.

Third, MBI can obtain effective and compelling relief in New Jersey. This case involves basic issues of contract law, not any issues of law that are unique to Virginia. The district court in New Jersey can fully and fairly assess the issues in this case and award relief to MBI if it deems such relief is merited.

Fourth, New Jersey has a much stronger interest in this matter than does Virginia. Virginia does not have an interest in a matter involving a Virginia corporation when none of the contract performance took place in Virginia and the defendant did not reach into Virginia to contract with the plaintiff. ISC did nothing to avail itself of Virginia's laws or its judicial system. By contrast, New Jersey does have an interest in resolving a dispute involving facts and importation of goods that took place in New Jersey.

Fifth, New Jersey has a strong interest in furthering the social policy of having its businesses' rights and obligations determined when the conduct at issue took place within its borders. This is especially true here, when the case involves important issues of international trade and commerce.

Accordingly, for the reasons explained above, this Court may not exercise specific jurisdiction under any of the parts of the Fourth Circuit's test.

### b.    General Jurisdiction

General jurisdiction applies when the defendant's contacts with the state are not the basis for the suit, but jurisdiction allegedly arises from the defendant's general, more persistent

contacts with the forum state. *ALS Scan*, 293 F.3d at 712. The defendant's contacts must be "continuous and systematic". *Id.* This is a more "demanding" standard than that which is necessary for a plaintiff to establish specific jurisdiction. *Id.*

Under the facts herein, this more demanding standard is not met and, thus, that general jurisdiction is not present. ISC simply has no continuous and systematic contact of any sort with Virginia. In *Diamond*, the court determined that it could not exercise general jurisdiction because, as here, the defendant had not conducted any business in Virginia, did not own property in Virginia, and did not solicit any business in Virginia. *Diamond*, 229 F.3d at 451-52. In addition, and again as herein, none of the defendant's employees visited Virginia on the defendant's behalf to conduct its business and the defendant (a health center) had no Virginia patients. *Id.* More specifically, ISC does not own property in Virginia, does not solicit business in Virginia, and none of ISC's employees visit Virginia to conduct business. Berliner Aff. ¶¶ 7-10. Moreover, like the health center in *Diamond* with no Virginia patients to whom it provides services, ISC does not have any Virginia customers that it services.

Similarly, in *Consulting Eng'rs.*, the trial court held that general jurisdiction could not be exercised against defendant corporations when those corporations were incorporated outside of Virginia, had a principal place of business outside Virginia, and did not have any employees or maintain any office or other presence in Virginia. *Consulting Eng'rs.*, 2007 U.S. Dist. LEXIS at *8-9. Again, the same facts are present in this case.

The Fourth Circuit has even held that general jurisdiction did not exist in circumstances in which the defendant actually did have some contact with the forum state. In *ESAB Group*, 26 of defendant's customers resided in the forum state. *ESAB Group*, 126 F.3d at 624. Nevertheless, this was not enough to establish general jurisdiction because the defendant did not have any sales

representatives or agents in the forum state. *Id.* at 624-25. Here again, ISC has neither Virginia customers nor sales representatives in Virginia. Berliner Aff. ¶ 8.

Accordingly, this Court has no basis to exercise general jurisdiction over ISC.

### 2. The Virginia Long Arm Statute

MBI cannot demonstrate that the exercise of personal jurisdiction is merited under the constitutional standard and, thus, it also cannot demonstrate that jurisdiction is proper under the "more stringent" Virginia long arm statute. The exercise of personal jurisdiction under the Virginia Long Arm statute section cited and relied upon by MBI in its Complaint is proper only if the asserted cause of action arises from the non-resident defendant's "transacting business" in Virginia. *Consulting Eng'rs.*, 561 F.3d at 277. More specifically, the relevant conduct must be "significant" and demonstrate "purposeful activity in Virginia." *Labriola*, 2008 U.S. Dist. LEXIS 84404, at *13. Furthermore, "merely entering into a contract with a resident party will not subject a nonresident defendant to personal jurisdiction . . . unless some substantial part of contractual formation or performance occurs in Virginia." *Id.*

Fatal to MBI's maintenance of suit against ISC in Virginia is that its basis for asserting jurisdiction in this Court is simply the fact that ISC entered into a contract with a Virginia corporation. The key is how the contract was formed and what happened under it. Here, the formation of the contract took place not in Virginia, but at ISC's offices in New Jersey, after MBI's President solicited ISC's business and voluntarily initiated discussion between the parties. No part, much less a "substantial part", of the formation of the contract took place in Virginia. Similarly, in *Bond Assocs.* the "transacting any business" part of the Virginia Long Arm statute was also at issue. Because the initial business contact between the parties took place in a meeting in New Jersey and the defendant never went to Virginia to negotiate, the court held that the

defendant's conduct was "the antithesis of transacting business with [plaintiff] in Virginia." *Bond Assocs.*, 1994 U.S. Dist. LEXIS 12000, at *12.

As made clear in the discussion of specific jurisdiction, in this case the contract performance also did not occur in Virginia; rather, it occurred only in New Jersey. The only other location where anything else occurred was Africa, where the chain of events began upon the instruction of MBI. The performance then shifted to New Jersey, where the gum arabic and its importation documentation were delivered. Thus, none of the steps in the contract performance occurred in Virginia.

Similarly, in *Century Steel*, the court held that jurisdiction was not proper under the statute even though the goods were manufactured in and shipped from Virginia. *Century Steel*, 29 Va. Cir. at 355. Moreover, the court stated that even if the defendant had accepted goods in Virginia, that would not have been enough to confer jurisdiction. *Id.* Here, in contrast, the gum arabic was not "manufactured" in Virginia – it was "manufactured" in Africa (grown and preliminarily refined to remove large impurities). In addition, the gum arabic was not shipped from Virginia to New Jersey – it was shipped from Africa and directly to New Jersey. Finally, neither the gum arabic nor its importation documents were delivered to and/or accepted in Virginia – again, each was delivered to and accepted in ISC's home state of New Jersey.

Therefore, this Court also may not exercise jurisdiction under the Virginia Long Arm Statute.

### B. If This Court Does Not Dismiss the Complaint for Lack of Personal Jurisdiction, In the Alternative Only, It Should Transfer the Case to the District of New Jersey

If this Court does not dismiss the Complaint for lack of personal jurisdiction, then venue should be transferred to the United States District Court for the District of New Jersey, where

suit indisputably could have been brought as a matter of law, and to where it should be transferred in the interests of justice.

Under 28 U.S.C. §1406(a), a court may, "in the interest of justice, transfer such case to any district or division in which it could have been brought." In the present case, MBI could and should have brought suit in the District of New Jersey. First, ISC resides in New Jersey. *See* 28 U.S.C. § 1391(a)(1) (A diversity of citizenship action may be brought "in the district where any defendant resides, if all defendants reside in the same State."). Second, the suit arises out of the shipment of gum arabic to New Jersey. *See* 28 U.S.C. § 1391(a)(2) (such an action may also be brought in a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.").

The issue of whether transfer is in the interest of justice under 28 U.S.C. § 1406(a) is decided under the same analysis that applies under 28 U.S.C. § 1404(a). *Kabat v. Bayer Cropscience LP*, 2008 U.S. Dist. LEXIS 41187, at *14 (E.D. Va. May 22, 2008).

Among the factors courts look to in deciding whether transfer is appropriate is the convenience of the forum to the witnesses. *Agilent Techs., Inc. v. Micromuse, Inc.*, 316 F. Supp. 2d 322, 328 (E.D. Va. 2004). As stated, there are four ISC employees who have knowledge of the transactions at issue and thus are likely to be witnesses, each of whom is either a member of top management and/or a key employee. This Court should not force these New Jersey resident employees to travel the long distance to Virginia to participate in depositions and then trial. In contrast, MBI would likely only have one witness – its President Mr. Benjelloun. Mr. Benjelloun is the only employee of MBI with whom ISC has ever transacted business, and frequently travels abroad on business. Berliner Aff. ¶ 20. Thus, discovery and trial in New Jersey would be much less burdensome to MBI. The imbalance here – four ISC witnesses who would have to travel to

Virginia as compared to one MBI witness who is a frequent traveler and would have to travel to New Jersey – weighs heavily in favor of transfer to New Jersey.

Additionally, while Virginia is MBI's choice of forum, "the weight a court will give to a plaintiff's choice of forum varies in proportion to the connection between the forum and the cause of action." *Agilent Techs., Inc.*, 316 F. Supp. 2d at 326. Here, as detailed above, there is no connection between the forum and the cause of action other than that MBI is a Virginia corporation. This cause of action arises out of, and is based on activities and conduct in New Jersey, not Virginia. Accordingly, MBI's choice of forum is entitled to less weight.

Furthermore, the interests of justice mandate that this case be transferred to New Jersey. As ISC has made clear, it was MBI that initiated the business relationship between the parties and solicited ISC's business. ISC did nothing to avail itself of this forum or of this Court's jurisdiction. The mere fact that ISC entered into a contract with a Virginia corporation is not enough to subject it to personal jurisdiction in Virginia. At no point in the parties' relationship, from beginning to end in 2010, did ISC do anything to reach out to Virginia, nor has ISC done anything since then to avail itself of doing business in the Commonwealth of Virginia. Under these circumstances, it would be improper for venue to lay with this Virginia based Court.

## III. CONCLUSION

In sum, this Court has no basis to exercise personal jurisdiction over ISC. MBI cannot meet its burden of proving that under the facts and circumstances of this case this Court can exercise personal jurisdiction over this New Jersey defendant, either under the constitutional due process standard or the more stringent standards of the Virginia Long Arm Statute. In this regard, ISC does not have the systematic and continuous contacts required for general jurisdiction, and because none of the factors in the Fourth Circuit's test are present here, specific jurisdiction also

does not exist. Likewise, MBI cannot demonstrate under the Virginia Long Arm statute that ISC engaged in any conduct in Virginia, much less "significant" conduct that demonstrates the requisite purposeful activity. Accordingly, this Court should grant this Motion and dismiss MBI's suit for lack of personal jurisdiction.

Alternatively, if this Court declines to dismiss the Complaint for lack of personal jurisdiction, venue should be transferred to the United States District Court for the District of New Jersey. Transfer is merited under the presented facts and circumstances and the relative burdens upon the parties. Proceeding with this matter in the Commonwealth of Virginia will be grossly burdensome to ISC given the number of its witnesses and the need for the presence in New Jersey to avoid harm to ISC's day to day business needs. In contrast, it will be much less burdensome for MBI to proceed with the matter in New Jersey. Thus, it would be in the interest of justice under 28 U.S.C. § 1406(a) for venue to be transferred to New Jersey.

Dated: May 16, 2011                                  Respectfully submitted,


                                                     __/s/ Lewis A. Smith_____

                                                     Lewis A. Smith (VSB No. 77333)
                                                     Foley & Lardner LLP
                                                     3000 K Street NW, Suite 600
                                                     Washington, DC 20007
                                                     202-672-5300
                                                     lsmith@foley.com

                                                     Attorney for Defendant
                                                     Importers Service Corporation

# CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of May 2011, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

John Cowherd, Esq.
Culin, Sharp, Autry & Day, P.L.C.
4124 Leonard Drive
Fairfax, VA 22030

　　/s/ Lewis A. Smith　　　　　　

Lewis A. Smith (VSB No. 77333)
Foley & Lardner LLP
3000 K Street NW, Suite 600
Washington, DC 20007
202-672-5300
lsmith@foley.com

Attorney for Defendant
Importers Service Corporation

WASH_7949846.3